CHARLES E. SHATTUCK & another, trustees, *vs.* MARY H.
STICKNEY & others.

Bristol.    January 19, 1912. — February 29, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DeCOURCY, JJ.

*Devise and Legacy.    Trust.    Words, "* Accumulation.*"*

A testator, having nominated two persons as the executors of his will, devised and
bequeathed one seventh of the residue of his estate "to my said executors as
trustees for my nephew A.  And I authorize and direct my said executors as such
trustees to invest the said share, both the principal and the income thereof as
it shall accrue, with full authority to them to sell and to reinvest the said princi-
pal and income as often as they may deem it expedient for the interest of the
trust.  Whenever, and not before, they shall in their discretion be satisfied that
it is safe and proper to do so, they may pay to the said A any part or the whole
of the accumulation of said trust.  If any balance of such trust fund shall be
remaining in the hands of my executors as such trustees upon the death of the
said A, then, in that event, the same shall be paid by them as follows: . . . If he
(my said nephew) leave neither widow nor issue, then the said trust fund is to
be divided among my heirs at law, or so much of the same as shall remain in
the hands of said trustees, at the death of my said nephew."  The persons
named as executors survived the testator and were appointed trustees.  On
the death of the survivor of them new trustees were appointed who brought
a bill for instructions.  The testator's nephew A survived and was unmarried
and without issue.  *Held,* that under R. L. c. 147, § 6, the new trustees had
the same discretionary power to make payments to the testator's nephew A
that was given to the original trustees, that the word "accumulation" as
used in the clause quoted meant the trust fund as accumulated, including
both the original principal and the increase from additions of income, and that
the trustees had power to pay any part or the whole of such fund to the testa-
tor's nephew A.

BILL IN EQUITY, filed in the Probate Court for the County of
Bristol on November 28, 1911, by the trustees under the will
of George O. Crocker, late of New Bedford, for instructions as
to their power and duties under the tenth article of that will.

On appeal the case came on to be heard before *DeCourcy,* J.,
who reserved it for determination by the full court upon the bill
and the answers of the several defendants, the objections to the
decree being made a part of the report.

The testator died on May 24, 1887, and his will was proved
on July 1, 1887.  Oliver C. Stevens of Boston and Charles P.

Rugg of New Bedford, who were named in the will as executors and trustees, were appointed trustees under the tenth article of the will for the benefit of Amos E. Lawrence, junior, afterwards Amos E. Lawrence, one of the defendants. Stevens and Rugg acted as joint trustees until the death of Rugg, on June 9, 1896, and thereafter Stevens acted as sole trustee under the tenth article until his death on March 25, 1911. Neither Stevens and Rugg acting as joint trustees nor Stevens acting as sole trustee ever paid to the defendant Amos E. Lawrence, any part of the principal of the trust fund created by the tenth article of the will, but they paid him all the income of the fund except the sum of about $18,000, which they accumulated and added to the principal of the fund. On May 12, 1911, the plaintiffs were appointed trustees under the tenth item of the will in place of Rugg and Stevens, deceased, and qualified as such trustees. At the time of the filing of the bill the defendant Amos E. Lawrence was unmarried and had no issue.

The tenth article of the will was as follows:

"X. The remaining seventh of the balance aforesaid of my property, I give, devise and bequeath to my said executors as trustees for my nephew Amos E. Lawrence, Junior. And I authorize and direct my said executors as such trustees to invest the said share, both the principal and the income thereof as it shall accrue, with full authority to them to sell and to reinvest the said principal and income as often as they may deem it expedient for the interest of the trust. Whenever, and not before, they shall in their discretion be satisfied that it is safe and proper to do so, they may pay to the said Amos E. Lawrence, Junior, any part or the whole of the accumulation of said trust. If any balance of such trust fund shall be remaining in the hands of my executors as such trustees upon the death of the said Amos E. Lawrence, Junior, then, in that event, the same shall be paid by them as follows: If he leave issue, or issue and a widow, in equal shares to said widow and issue, that is to say one half to the widow, and one half divided among his issue. And if he leave no widow the whole to be divided among his issue. If he leave a widow and no issue, the widow is to receive twenty-five thousand dollars of said trust fund, and the remainder is to be divided among my heirs at law. If he (my said nephew) leave neither widow

nor issue, then the said trust fund is to be divided among my heirs at law, or so much of the same as shall remain in the hands of said trustees, at the death of my said nephew."

The Probate Court made a decree instructing the plaintiffs that they had the same power and authority as the original trustees to pay any part or the whole of the accumulation of the trust to the defendant Lawrence, and that "the accumulation" of the trust included the original principal of the trust fund as well as the accumulated income. The guardian *ad litem* appointed by the Probate Court to represent the interests of persons unascertained or not in being, and also the executor of the will of Oliver C. Stevens, who was one of the heirs at law of George O. Crocker at the time of his death, appealed from the decree. The guardian *ad litem* objected to the decree on the ground that the authority to pay to the defendant Amos E. Lawrence, which by the will was given to Charles P. Rugg and Oliver C. Stevens, did not pass to the petitioners. The defendant executor of the will of Oliver C. Stevens objected to the decree on the ground that the words "any part or the whole of the accumulation of said trust" referred to and included only income and investments of income, and that the plaintiffs had not the power to pay to the defendant Lawrence any part of the property in their hands as trustees which was the original principal of the trust fund as invested and reinvested.

*C. E. Shattuck,* for the plaintiffs, stated the case.

*G. D. Burrage,* guardian *ad litem* of persons unascertained or not in being.

*R. H. Gardiner, Jr.,* for the Old Colony Trust Company, executor of the will of Oliver C. Stevens.

*W. G. Thompson,* for Amos E. Lawrence.

DeCourcy, J. The first question presented by the bill is, in substance, have the plaintiffs the same discretionary power to make payments to Amos E. Lawrence as was given to their predecessors in the trust, Charles P. Rugg and Oliver C. Stevens, by the tenth item of the will of George O. Crocker? The appeal of the defendant Burrage from the decree of the Probate Court and his objections thereto filed in this court definitely raise this issue. *Bartlett* v. *Slater,* 183 Mass. 152. *Codwise* v. *Livermore,* 194 Mass. 445.

It is expressly provided by our statute concerning trusts that "a new trustee . . . appointed in the place of a former trustee in conformity with a written instrument creating a trust, shall, upon giving such bond as may be required, have the same powers, rights and duties and the same title to the estate, whether as a sole or a joint trustee, as if he had been originally appointed." R. L. c. 147, § 6. Such has been the law of this Commonwealth for nearly a century. St. 1817, c. 190, § 40. Rev. Sts. c. 69, § 8. Gen. Sts. c. 100, § 9. Pub. Sts. c. 141, § 6. In construing the statute this court has said substantially that where discretionary power has been given to the trustees named in a will but is not strictly limited to them by its terms, the statute clothes their successors with a like authority, unless the words of the instrument clearly indicate that the donor intended to limit the discretionary power to the donees of his personal selection. *Stanwood* v. *Stanwood,* 179 Mass. 223. *Sells* v. *Delgado,* 186 Mass. 25, and cases cited.

An examination of the will of George O. Crocker discloses no such intention on his part to make the discretionary power in Item X personal to the original trustees. One seventh of his estate is given to his executors "as trustees for my nephew Amos E. Lawrence, Junior." The only provision for applying this bequest during the life of the beneficiary is: "Whenever, and not before, they [the trustees] shall in their discretion be satisfied that it is safe and proper to do so, they may pay to the said Amos E. Lawrence, Junior, any part or the whole of the accumulation of said trust." It appears that said Lawrence was and is unmarried and without issue. Under the construction urged by the defendant Burrage, that the power given to Rugg and Stevens was a personal confidence to be exercised by them only, all payments from this trust fund to the person for whose benefit it was expressly created must cease upon the death of the original trustees, —an event which the testator must have foreseen as liable to happen and which in fact has occurred. While it may be conceded that the testator had confidence in the trustees selected by him, as is usually the case, we cannot assume that he considered them the only men who could ever be entrusted with the power of deciding when it was safe and proper to make payments to his nephew. And it is plain that he did not intend to restrict the

benefit of the bequest to the period of the lives and trusteeship of Rugg and Stevens, rather than to the period of the life of Amos E. Lawrence, junior, for whose benefit it was designed.

A consideration of the other provisions of the will confirms the conclusion that the testator intended to make this discretionary power one that is blended with the trust to which it is attached and not personal to Rugg and Stevens. Frequently in the will he refers to "my executors," "my said executors," "my said executors in trust" and "my executors in trust for the benefit of my sister;" but only once, viz., in Item I, are Rugg and Stevens as executors and trustees mentioned by name. For instance in Item III the discretionary power to pay $5,000 towards a free hospital within five years after the testator's death is conferred upon "my said executors," without naming them. And it is significant that when he did intend to limit discretionary power to the person selected by himself he used apt words to express that intention; as in Item VII, where he directs his executors to pay "to my sister, Mary H. Stickney, the sum of ten thousand dollars to be used by her at her *sole* discretion for such charitable purposes as she may deem best."

We are of opinion that the decree of the Probate Court was correct in instructing the plaintiffs that they have the same power and authority to make payments to the defendant Amos E. Lawrence as was given to their predecessors in the trust by the terms of Item X of said will.

The second question presented by the plaintiffs requires us to determine whether their discretionary power to make payments to the said Amos E. Lawrence is confined to the accumulated income of the trust fund, or extends also to the original principal. What was the intention of the testator when he authorized the trustees to pay to said Lawrence "any part or the whole of the accumulation of said trust"?

Before analyzing Item X, which gives rise to this controversy, it is important to examine the will as a whole. After bestowing about $66,000 upon public charities and kindred objects, distributing about $40,000 among personal friends and domestics and giving certain real estate and a war claim to his nephews Oliver C. Stevens and Charles D. Stickney and his sister Mary H. Stickney, the testator proceeds to dispose of the balance of his

estate. The value of this residue does not appear, but from the statement made at the argument that the one seventh in controversy amounts to $220,000, it is apparent that there remained a large sum for disposition. His heirs at law at the time of his death were a sister, the three children of one deceased sister and the two children of another. Including with these the son of his surviving sister, he divided the entire balance of his estate in seven equal parts among them. To his niece and four of his nephews he made absolute gifts. The share of his sister he placed in trust for her, but empowered her to terminate the trust at any time in her discretion. The remaining one seventh of the balance was given, in the language of Item X, "to my said executors as trustees for my nephew Amos E. Lawrence, Junior."

The reasons which induced the testator to place the share of this nephew beyond the control of himself and of possible creditors do not appear. It may be significant that the case of *Broadway National Bank* v. *Adams*, 133 Mass. 170, had been recently published at the date of the will. But it is quite evident that the testator intended to treat alike all his heirs, including this unmarried nephew, and that the restraint upon the nephew's power to control his one seventh portion was placed there solely for his benefit. It is also apparent that the testator regarded as this nephew's share the original fund and any income that the trustees might deem it best to withhold from him and to reinvest. Throughout Item X the testator treats this share, including the original principal as well as the accumulated income, as a single fund, not only for the purposes of investment but also for those of distribution. The trustees are authorized to invest and reinvest "said share, both the principal and the income thereof," as a single and increasing fund. Upon the death of the beneficiary Lawrence, "if any balance of such trust fund" shall be remaining in the hands of the trustees, "if he leave . . . no widow, the whole" of the balance is to be divided among his issue. In the event of his death, leaving neither widow nor issue, provision is made for division among the testator's heirs at law of "the said trust fund . . . or so much of the same as shall remain in the hands of said trustees, at the death of my said nephew." And from the expression "if any balance of such trust fund shall be remaining . . . upon the death of the said

Amos E. Lawrence," it is clear that the testator realized and intended that the entire fund, principal and interest, might be paid to said Lawrence, and that no balance might be remaining at the time of his decease.

It is urged by the defendants other than Lawrence that the words limiting payments in favor of Lawrence to the "accumulation" of the trust fund prevent the payment to him of any portion of the original principal; and recourse is had to the meaning of the word "accumulation" as defined by dictionaries of authority. Where the intention of the testator is apparent from a careful examination of the will as a whole, it will not be defeated by an inaccurate use of language. Moreover, as is argued by counsel for Lawrence, if the word "accumulation" be considered, not in its primary signification of the action or process of accumulating, but in its equally accurate secondary meaning of the result of the process of accumulating, or the accumulated mass, even the words used by the testator to indicate the source from which payments to Lawrence himself might be made may well be interpreted to mean "any part or the whole of the trust fund as accumulated," including both the original principal and the increase from additions of unpaid income.

Be that as it may, the unsoundness of the contention that the testator intended by the word "accumulation" to refer only to the accumulated income of the fund, is evident from the fact that such construction would result upon the death of the beneficiary in the distribution of only the balance of the accumulated income with no disposition provided for the principal. A construction of a carefully prepared will which involves intestacy as to a large and important share is not to be readily adopted. *Damon* v. *Bibber,* 135 Mass. 458, 461. *Boston Safe Deposit & Trust Co.* v. *Coffin,* 152 Mass. 95, 99.

We are of opinion that the Probate Court, in construing the clause "any part or the whole of the accumulation of said trust" as referring to and including the entire trust fund in the hands of the plaintiffs, was correct, and that the decree appealed from should be affirmed.

*So ordered.*