FREDERICK H. KIRWIN, administrator, *vs.* ATTORNEY GENERAL & others.

Middlesex.    December 3, 4, 1930. — March 2, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Probate Court*, Jurisdiction, Petition for distribution, Parties. *Devise and Legacy*, Charity, Validity. *Trust*, Validity, Charitable. *Evidence*, Competency. *Executor and Administrator.*

A testator by his will gave the residue of his estate "to my executors hereinafter named, in trust, for such public charitable purposes as shall meet their approval under the conditions in which they may be

called to act." After the administration of the estate had been completed, but before distribution of the residue had been made, the survivor of the executors named died. One who was appointed administrator *de bonis non* with the will annexed filed a petition in the Probate Court alleging that the surviving executor had "designated . . . his purpose to distribute" the residue to certain public charities in certain amounts and that the petitioner adopted such scheme; and sought a decree ordering distribution in accordance therewith or in some other manner. The Attorney General, the widow and heirs of the testator and the charities specified were made parties. At the hearing of the petition, evidence was admitted that the surviving executor had prepared a list of said charities, on which was noted the amount to be paid to each, and had consulted the Attorney General and secured his approval thereof; and that he had inquired of one of the charities concerning the sum necessary to accomplish a certain purpose. The judge of probate found that the scheme of distribution was just and reasonable and that he adopted it as the scheme of the court, and a decree was entered directing the petitioner to make distribution in accordance therewith. Upon appeal by one of the testator's heirs, it was *held*, that

(1) The petition in reality was a petition for distribution;

(2) In the circumstances, there was no impropriety in entertaining the petition although the petitioner had not secured his appointment as trustee under the will and turned over to himself in that capacity the residue of the estate for the purpose of seeking the same order for distribution as that sought by the petition;

(3) The Probate Court, having jurisdiction of the testator's estate, had jurisdiction of the matter concerned in the petition;

(4) There was nothing in the words of the will to show that the testator placed a personal confidence in the executors named which would permit action by them only, and the trust established did not fail by reason of the deaths of the named executors: their power with respect to the residue devolved upon the petitioner or upon the Probate Court if he should fail to exercise it;

(5) The words of the will established a valid charitable trust;

(6) All parties in interest were before the court: the widow and the heirs of the testator and the Attorney General were necessary parties, and the designated charities were at least interested and proper parties;

(7) There was no error in the admission of the evidence: it was competent to enable the judge of probate to act with full knowledge of all matters material to the rightful distribution of the residue;

(8) The will having created a valid charitable trust, the appellant had no standing to object to the designation of the beneficiaries thereof by the petitioner or by the judge of probate;

(9) The decree was affirmed.

PETITION, filed in the Probate Court for the county of Middlesex on August 9, 1929, described in the opinion.

The petition was heard by *Leggat*, J., a stenographer hav-

ing been appointed under G. L. c. 215, § 18, as amended. Material evidence and a decree entered by order of the judge are described in the opinion. The administrator with the will annexed of Charles F. Buttrick appealed.

*A. P. Stone*, (*J. H. Ramsey* with him,) for the respondent Cook, administrator.

*E. K. Nash*, Assistant Attorney General, for the Attorney General.

*J. J. Flynn*, for The Waltham Hospital and another.

*J. L. Harvey*, for The Leland Home for Aged Women.

*E. C. Jenney*, for Tufts College.

*G. P. Davis*, for Waltham Training School for Nurses and another, submitted a brief.

·*G. P. Drury*, for Waltham Chapter, American National Red Cross, submitted a brief.

WAIT, J.  The residuary clause of the last will of Francis Buttrick of Waltham in the county of Middlesex set out: "All the rest, residue and remainder of my estate, however invested, designated, or described, I give, devise, bequeath to my executors hereinafter named, in trust, for such public charitable purposes as shall meet their approval under the conditions in which they may be called to act." The will bore date of December 29, 1892, and was duly admitted to probate on November 7, 1894. Five persons were nominated as executors, all of whom qualified. The survivor, Thomas H. Armstrong, died in June, 1927. The property consisted in considerable part of parcels of real estate, the last of which was not converted into money until 1927. All other legacies were paid, and all matters of administration on the estate were completed before the death of Armstrong, except the presentation and allowance of the final account of the executors and the payment over of the residuary bequest. A sum in excess of $60,000 remained in the hands of the remaining executor. The petitioner was duly appointed administrator with the will annexed of the goods not administered in August, 1927. He filed this petition in the Probate Court on August 9, 1929, alleging the death and the allowance of the will of Francis Buttrick; the qualification of the executors, the

payment by them of all specific and pecuniary legacies and of all debts and charges of administration; the death of all the executors without having disposed of the residue or having distributed it for charitable purposes, except that Armstrong, the survivor, " designated his approval of the distribution of the balance remaining in his hands, and his purpose to distribute said balance, to the following charitable purposes " (naming eight corporations or organizations admitted to be public charities, to which are assigned varying amounts aggregating $60,760); a description of the suggested donees; the appointment and qualification of the petitioner; the filing of his present account showing a balance on hand of $64,186.88; the completion of all matters of administration by him excepting the disposition of the balance; and his adoption of the scheme of the last surviving executor for distribution, so far as he has right and authority. The petition sets out the terms of the residuary clause and annexes a copy of the will; and it further alleges that the petitioner is in doubt what disposition to make of the funds in his hands. It prays that the court will order distribution of the balance to the charities named, in proportion to the amounts proposed by Armstrong, or will order in what manner it be distributed and to whom it be paid. The Attorney General, the heirs at law and next of kin or their personal representatives where they are no longer living, the administrator with the will annexed of the goods not already administered of the estate of the widow, and the several charities named by Armstrong are made the defendants. All were duly served with notice. The Attorney General, all but one of the several charities, and the administrator with the will annexed of an heir, appeared and answered. The petition was taken as confessed against such respondents as did not appear and answer. A motion that the paragraph alleging the designation of distributees by Armstrong be struck out was denied.

At the hearing the appellant, administrator with the will annexed of one of the heirs, objected to the introduction of evidence by the petitioner and to any argument or

statement on his behalf. Against his exception, evidence was admitted that Armstrong, early in 1927, consulted the Attorney General with reference to his account as executor, called to his attention a list of the charities to which he proposed to make distribution of the residue in his hands, marked in pencil on the list the amount he purposed giving to each charity, and asked his assent. The Assistant Attorney General, to whom the matter was entrusted, wrote Armstrong that the scheme proposed met with the approbation of the Attorney General. He produced at the hearing the list with the penciled amounts which had been left in his office. The letter stated that the Attorney General did not care to be heard on allowance of the account and was so notifying the register of probate, but felt that no further charges should be made. It also stated: " as I understand it you are prepared to make a distribution to the charities selected by you and thus wind up the entire matter in the near future. I would appreciate your advising this office when that has been done." Armstrong, from his sick bed, acknowledged receipt of this letter and promised, as soon as he was able, to take up the matter " and notify you, as requested, when distribution has been made." He died shortly after, without having filed the account and without other designation of disposition of the residue. The attorney for Tufts College, one of the distributees suggested, was permitted to put in evidence a letter of Armstrong's dated April 11, 1927, inquiring of the registrar the amount necessary for a scholarship and stating that he had a sum he wished to give, but must first have the approval of the Attorney General; and the reply of the president of the college, stating an amount and the need for scholarships. The petitioner testified that Armstrong had discussed with him the charities to which distribution was considered, but had never given him a list of them. Evidence was admitted that Armstrong had been counsel for the testator Buttrick and in cordial relations with him. With the exception of Tufts College, the charities named are concerned with the people of Waltham.

The court found that the residuary clause established a trust for public charitable purposes; that the surviving executor had designated the distribution to the persons named; that the petitioner had adopted and designated the same scheme of distribution, and that it was a just and reasonable one which should be made. It decreed that the petitioner make distribution as directed, and adopted as the scheme of the court the scheme of distribution designated by Armstrong, adopted and designated by the petitioner. It directed payments in amounts the same as designated by Armstrong, and the distribution of any balance remaining after paying the expenses of this proceeding and the expenses of administration, among the same corporations in proportion to the amounts previously ordered.

The petition upon which the decree appealed from is based, though in form resembling a petition for instructions filed by an administrator with the will annexed, is in substance a petition for distribution. It has been dealt with by the court as if a petition for distribution. We see no insuperable objection thereto. In regular course the surviving executor named in the will should have completed his administration by turning over the balance of the estate disclosed by a final account as executor to himself as trustee, and, after qualifying by giving the bond required by G. L. c. 205, § 1, if he desired instructions in regard to the distribution he purposed to make of the trust fund, should then have filed his petition for instructions. In practice, however, it may be proper to permit a final distribution among the ultimate beneficiaries without intermediate and expensive proceedings which involve a mere duplication in accounting and qualifying by giving bond, where all parties in interest are before the court. The latter was the course of proceeding contemplated by the surviving executor; but his death intervened to prevent its execution. That death made necessary the appointment of an administrator de bonis non with the will annexed. Once appointed, such an administrator, who would be subject to the same trusts which had bound the

surviving executor, *Shattuck* v. *Stickney,* 211 Mass. 327, could proceed in the manner contemplated by his predecessor. That is what he has done. He has accepted and approved of the scheme of distribution which was framed by Armstrong with the approval of the Attorney General. He has formulated the same scheme of distribution, also with the consent of the Attorney General. He has rendered the account of the administration of the estate of Francis Buttrick, and asks an order for distribution of the residue without the intermediate intervention of a trustee qualified to do the very thing which he desires now to do, *i.e.* to distribute to the public charitable purposes to which the testator dedicated it.

The court had jurisdiction of the subject matter. Its jurisdiction, acquired as a result of the death of the testator within its territorial district leaving property to be administered therein, and begun by the probate of the will, would end only with final distribution of the property among those entitled thereto by law. *Colby* v. *Stearns,* 270 Mass. 461. Its decree should be disturbed only if error appears. There is no error in substance if all parties entitled to be heard before final distribution have been heard and the distribution ordered is in accord with law.

We find nothing in the words of the residuary clause which indicates that the testator had in mind any scheme of distribution later to be disclosed to those named as executors as binding upon them, or that he placed a personal confidence in the executors named which would require action by them only (compare *Tainter* v. *Clark,* 13 Met. 220). Nor do we find anything to indicate that any other than public charities could benefit, so that the gift would fail as a charity within the decisions in *Nichols* v. *Allen,* 130 Mass. 211, *Olliffe* v. *Wells,* 130 Mass. 221, *Minot* v. *Attorney General,* 189 Mass. 176, *Wilcox* v. *Attorney General,* 207 Mass. 198 and *Davison* v. *Wyman,* 214 Mass. 192, because distribution to objects or persons not charities could be made. By express words the objects of the gift are " public charitable purposes." The " conditions in

which they may be called to act" are to govern the exercise of the executors' discretion in approving a specific gift. A public calamity like a widespread drought, an earthquake, a great fire or a famine, might determine a use for the fund and call upon them, in their discretion, to act. The gift is clearly a good charitable gift. *Saltonstall* v. *Sanders,* 11 Allen, 446. *Rotch* v. *Emerson,* 105 Mass. 431. *Bullard* v. *Chandler,* 149 Mass. 532. *Gill* v. *Attorney General,* 197 Mass. 232. *Sherman* v. *Shaw,* 243 Mass. 257. *Reilly* v. *McGowan,* 267 Mass. 268. See also *Wells* v. *Doane,* 3 Gray, 201. In *White* v. *Ditson,* 140 Mass. 351, 352 a gift was held good as a charity "to be disposed of by him for such charitable purposes as he shall think proper"; in *Weber* v. *Bryant,* 161 Mass. 400, 402, 403, a gift to be distributed "among and applied to such objects and purposes of benevolence or charity, public or private, including educational or charitable institutions and the relief of individual need . . . as the trustees for the time being shall deem worthy thereof"; in *Coffin* v. *Attorney General,* 231 Mass. 579, 580, a gift to "be devoted to Missions & like good objects as they [persons named] may think best & the principal shall go finally to the same or similar objects as my wife & daughter may decide knowing as they do my purpose"; and in *Binney* v. *Attorney General,* 259 Mass. 539, 545, and *Bullard* v. *Chandler, supra,* a gift "to constitute a fund, . . . the income from which, I desire my sisters to apply to the relief and comfort of the poor and unfortunate, whom we have aided in past years, and also to others, as their judgment may dictate. It is strictly for private charities, and may be known to them, as I consider it, as 'the James and George fund.' It is the best monument I can erect for them . . . ." See *Eliot* v. *Trinity Church,* 232 Mass. 517.

The fund thus validly established as a public charity was given to the executors in trust, to be used for such public charitable purposes as should meet their approval. The law is well settled that such a trust will not be allowed to fail for want of a trustee. *Wells* v. *Doane, supra.*

*Schouler, petitioner,* 134 Mass. 426. *Darcy* v. *Kelley,* 153 Mass. 433, 439. *Sells* v. *Delgado,* 186 Mass. 25. *Sherman* v. *Shaw, supra. Reilly* v. *McGowan,* 267 Mass. 268, 269. *Minot* v. *Baker,* 147 Mass. 348. In circumstances such as here occurred an administrator with the will annexed has been allowed to execute the power of disposition given by the will to an executor. *Shattuck* v. *Stickney, supra. Richardson* v. *Morey,* 18 Pick. 181. The court can appoint a trustee and it can frame a scheme of distribution if the trustee fails to do so. *Sherman* v. *Shaw, supra.* Having the power and the duty stated, we think it could determine whether all parties in interest were before it, and, if it found them to be, could take evidence by whomsoever offered to enable it to act with full knowledge of all matters material to the rightful distribution of the fund. *Loring* v. *Steineman,* 1 Met. 204, 209. The necessary parties were the administrator with the will annexed, the representatives of the widow and any deceased heirs or next of kin, the living heirs or next of kin, and, since a public charitable trust was in question, the Attorney General. *Saltonstall* v. *Sanders, supra.* All these were before the court. The donees nominated by the surviving executor in his lifetime, those nominated by the administrator with the will annexed, and those proposed as donees under a scheme to be framed by the court, were proper parties; and if, as they claimed, they had rights vested by the acts of the survivor of the executors in his lifetime and of the administrator with the will annexed in approving and adopting that executor's designation, they were necessary parties. The donee claimants were before the court. Evidence of the acts of Armstrong was material. We find no prejudicial error in its admission. No one disputes that the donees named as distributees came within the terms of the trust. They are all public charities. The appellant has no right in the fund if the gift created a valid trust for charity. *Weber* v. *Bryant, supra.* He has no standing to object to the distributees once his private right is held not to exist. It does not exist. If we assume, without deciding, that neither the one surviving executor nor the petitioner

as administrator with the will annexed of goods not already administered had power to vest rights in the fund in the several claimants, the judge of probate had authority to order distribution in accord with a scheme adopted and acted upon by him. This is the substance of what he has done. The decree as originally drawn was erroneous in directing distribution in part to the several counsel named. *Boynton* v. *Tarbell,* 272 Mass. 142. This, however, the judge has corrected. As so amended the decree is affirmed.

*Ordered accordingly.*