NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-905                                    Appeals Court

HARVARD CLIMATE JUSTICE COALITION & others[1] vs. PRESIDENT AND FELLOWS OF HARVARD COLLEGE & others.[2]

No. 15-P-905.

Suffolk.    June 7, 2016. - October 6, 2016.

Present: Cypher, Grainger, & Kinder, JJ.

Charity. Corporation, Charitable corporation. Practice, Civil, Motion to dismiss, Standing.

Civil action commenced in the Superior Court Department on November 19, 2014.

Motions to dismiss were heard by Paul D. Wilson, J.

Joseph E. Hamilton, pro se.
Benjamin A. Franta, pro se.
Brett Blank, Assistant Attorney General, for the Attorney General.
Martin F. Murphy for President and Fellows of Harvard College & another.

---

[1] Benjamin A. Franta, Sidni M. Frederick, Olivia M. Kivel, and Talia K. Rothstein in their capacity as student members of the Harvard Climate Justice Coalition. After oral argument, three plaintiffs who are named in the complaint as members of the coalition withdrew from the appeal.

[2] Harvard Management Company, Inc., and the Attorney General.

Jeffrey D. Pierce, of California, & Piper Hoffman, for Animal Legal Defense Fund, amicus curiae, submitted a brief.

Daniel M. Galpern, of Oregon, & Joseph B. Simons, for James E. Hansen, amicus curiae, submitted a brief.

CYPHER, J.  The plaintiffs, Harvard Climate Justice Coalition, an unincorporated association of students at Harvard University (university), and its members, appeal from a Superior Court judgment dismissing their action that sought a permanent injunction requiring the President and Fellows of Harvard College (the university's formal name) and Harvard Management Company, Inc. (the company that manages the endowment funds) (collectively, Harvard), to divest the university's endowment of investments in fossil fuel companies.  In a two-count complaint, the plaintiffs allege that those investments contribute to climate changes (commonly known as global warming), which adversely impact their education and in the future will adversely impact the university's physical campus.  We affirm.[3]

The students filed their complaint in November, 2014. Almost two months later, the defendants, Harvard and the Attorney General,[4] filed motions to dismiss.  In count one of the complaint, the plaintiffs asserted that the harms of global

---

[3] We acknowledge the amicus briefs submitted by Dr. James E. Hansen and the Animal Legal Defense Fund.

[4] Because this case concerns investment decisions of a charitable corporation, the plaintiffs joined the Attorney General as a defendant as required by G. L. c. 12, §§ 8, 8G. See Brady v. Ceaty, 349 Mass. 180, 181 (1965).

warming resulting from investments in fossil fuel companies constitute mismanagement of the charitable funds in the university's endowment.  In count two, the plaintiffs sought to assert the rights of "[f]uture [g]enerations" to be free of what the plaintiffs call the "[a]bnormally [d]angerous [a]ctivities" of those companies, and proposed a new tort of "[i]ntentional [i]nvestment in [a]bnormally [d]angerous [a]ctivities."

The judge allowed both motions to dismiss.  As to count one, the judge ruled that the plaintiffs failed to show that they had standing to maintain their claim of mismanagement of the endowment.  As to count two, the judge declined to allow the plaintiffs to assert the rights of future generations, and declined to recognize the proposed new tort.

Analysis.  1.  Count one.  The plaintiffs' complaint asserts that the "burning of fossil fuels results in the emission of greenhouse gases that become trapped in the atmosphere . . . [and] accumulate . . . [resulting in] climate change[, which causes] physical changes to the Earth's ecosystems" and results in "deleterious geopolitical, economic, and social consequences."  In count one of their complaint, the plaintiffs allege that Harvard's investments in fossil fuel companies is a breach of Harvard's fiduciary and charitable duties to uphold the university's "special obligation and accountability to the future, to the long view needed to

anticipate and alter the trajectory and impact of climate change."  The plaintiffs seek a permanent injunction requiring Harvard immediately to sell their direct holdings in fossil fuel companies and to begin divesting their indirect holdings in those companies.

The plaintiffs recognize that their challenge to Harvard's investments invokes the exclusive standing of the Attorney General under G. L. c. 12, § 8, inserted by St. 1979, § 716, to "enforce the due application of funds given or appropriated to public charities."[5]  While acknowledging that authority, the plaintiffs note that Massachusetts law recognizes the right of special interest plaintiffs to bring suits against charities.

In his memorandum and order, the judge noted that on "rare occasions," the Supreme Judicial Court has permitted persons other than the attorney general to challenge the management of charitable funds.  The judge's noting of "rare occasions" appears to be a reference to a limited exception to the Attorney General's exclusive standing known as the "special standing" doctrine.  Special standing applies only where "the claim has

---

[5] "The power and duty delegated to the Attorney General to enforce the proper application of charitable funds are a recognition by the Legislature not only of his [or her] fitness as a representative of the public in cases of this kind, but of the necessity of protecting public charities from being called upon to answer to proceedings instituted by individuals, with or without just cause, who have a private interests distinct from those of the public."  Dillaway v. Burton, 256 Mass. 568, 575 (1926).

arisen from a personal right that directly affects the individual member" of a charitable organization. <u>Weaver</u> v. <u>Wood</u>, 425 Mass. 270, 276 (1997).

On appeal, the Attorney General cites to cases in which our courts have determined that the special standing doctrine is applicable because the plaintiffs have been accorded a personal right in the administration or management of a public charity and, as such, may enforce that right against the charitable organization.[6] While the plaintiffs recognize that courts have acted on personal rights in such cases, they do not assert any of the personal rights identified in those cases, or any other personal right in the management or administration of Harvard's endowment. Instead, the plaintiffs assert that they satisfy the criteria for special standing because as student members of the university, they are to receive the benefits of Harvard's charitable authority and therefore enjoy benefits that are distinct from the general benefits enjoyed by members of the public.

---

[6] The cases cited by the Attorney General include <u>Jessie</u> v. <u>Boynton</u>, 372 Mass. 293, 302-305 (1977) (members had standing to challenge elimination of voting rights in charitable corporation); <u>Lopez</u> v. <u>Medford Community Center, Inc.</u>, 384 Mass. 163, 166-168 (1981) (individuals had standing to litigate claim that they were unlawfully denied membership in charitable corporation but could not litigate claim of mismanagement); <u>Maffei</u> v. <u>Roman Catholic Archbishop of Boston</u>, 449 Mass. 235, 245 (2007) (plaintiffs alleged personal rights that entitled them to standing to litigate claim of equitable reversion of land conditionally gifted to church).

"[M]embership in a public charity, alone, is [in]sufficient to give standing to pursue claims that a charitable organization has been mismanaged or that its officials have acted ultra vires." Id. at 277. The plaintiffs, moreover, fail to show that they have been accorded a personal right in the management or administration of Harvard's endowment that is individual to them or distinct from the student body or public at large.

The plaintiffs further assert that the fossil fuel investments have a chilling effect on academic freedom and have other negative impacts on their education at the university. The judge understood that argument as an attempt by the plaintiffs to obtain standing on the theory that the investments had impacts that interfered with their personal rights. After lengthy consideration, the judge concluded that those arguments were too speculative, too conclusory, and not sufficiently personal to establish standing.

As the students failed to demonstrate special standing, count one fails to state a claim upon which relief may be granted, and was properly dismissed. See Doe v. The Governor, 381 Mass 702, 705 (1980); Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-636 (2008).

2. Count two. With regard to their second count, the judge stated that the plaintiffs assert the rights of future generations to be free of what they call "[i]ntentional

[i]nvestment in [a]bnormally [d]angerous [a]ctivities," referring to that count as a tort claim.  The judge noted that no court in any jurisdiction has ever recognized that tort, and in any event creating a new tort in the Commonwealth is the function of the Supreme Judicial Court or the Legislature.

The judge also stated that the plaintiffs had not provided any recognized legal principle in support of their unilateral assertion to represent the interests of future generations. "[I]f the individual plaintiffs may not maintain the action on their own behalf, they may not seek relief on behalf of a class."  Doe v. The Governor, supra at 704-705.  The judge therefore properly dismissed the second count.

Conclusion.  We conclude, as did the judge below, that the plaintiffs "have brought their advocacy, fervent and articulate and admirable as it is, to a forum that cannot grant the relief they seek."[7]

Judgment affirmed.

---

[7] The plaintiffs also represented their cause before this court with a commendable degree of skill, passion, and ingenuity.